J-S76027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CALEB GREGORY BARNES | |
| Appellant | No. 3722 EDA 2016 |

Appeal from the Judgment of Sentence imposed September 19, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0002140-2015

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 12, 2018**

Appellant, Caleb Gregory Barnes, appeals from the judgment of sentence imposed on September 19, 2016, in the Court of Common Pleas of Lehigh County following his conviction of first-degree murder, criminal conspiracy to commit first-degree murder, tampering with evidence, and abuse of corpse.[1]  Following review, we affirm.

The facts of this case and a summary of testimony and evidence presented at Appellant's trial are set forth in great detail in the trial court's November 7, 2016 opinion issued in conjunction with its order denying

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501; 2501 and 903; 4910(a); and 5510, respectively.

Appellant's post-sentence motions. Trial Court Opinion, 11/7/16, at 6-27, which we incorporate herein by reference as if fully set forth. While some of those facts will be reviewed in our discussion of the issues raised by Appellant, at this juncture it is sufficient to note that Appellant and his co-defendant Jamie Silvonek ("Jamie") were arrested on March 15, 2015 and were charged, *inter alia*, with the murder of Jamie's mother and conspiracy to commit murder.[2] Following a four-day trial in August 2016, a jury found Appellant guilty of the crimes listed above. On September 19, 2016, the trial court sentenced Appellant to an aggregate sentence of life in prison plus 22 to 44 years. This timely appeal followed. Appellant filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 13, 2017, the trial court issued an opinion in accordance with Pa.R.A.P. 1925(a).

Appellant presents seven issues for our consideration:

A. Did the trial court err when it denied [Appellant's] pre-trial motion to suppress statements made by [Appellant] to the police while under interrogation and allowed them to be entered as evidence?

B. Did the trial court err in permitting the Commonwealth to "role-play" and read aloud to the jury text messages, selectively taken out of context by the Commonwealth, of [Appellant], codefendant and others, using the prosecuting district

_____

[2] At the time of the murder, Appellant was a 20-year-old soldier stationed at Fort Meade, Maryland, and was involved in a relationship with then-14-year-old Jamie. Jamie's decertification request was denied and she entered into a guilty plea that carried a sentence of 35 years to life in prison. As part of her plea arrangement, Jamie agreed to testify truthfully at Appellant's trial.

attorneys, a police prosecutor and a Commonwealth witness to play the different roles?

C. Did the trial court err in allowing the Commonwealth to use a "PowerPoint" presentation in its opening statement which would allow the jury to view items that may or may not be admitted into evidence or to otherwise highlight certain evidence which may or may not be presented?

D. Did the trial court err in allowing Detective Heffelfinger to testify to a third party having overheard [Appellant] and codefendant discussing the plan to commit the homicide when that third-party witness was available to testify?

E. Did the trial court err in limiting the defense[']s use of the taped statements of the codefendant during examination of the codefendant by the defense during the trial?

F. Did the trial court err in allowing the Commonwealth to present ex-parte various applications, affidavits, or summaries of motions and supporting materials without giving defense counsel or [Appellant] notice or the ability to be heard?

G. Did the trial court err in denying [Appellant's] motion for recusal based upon the ex-parte communications between the district attorney and the trial court?

Appellant's Brief at 7-9 (some capitalization omitted).

In his first issue, Appellant contends the trial court erred by denying his motion to suppress statements Appellant made to the police during his interrogation and by permitting them to be entered as evidence. In *Commonwealth v. Harrell*, 65 A.3d 420 (Pa. Super. 2013), this Court reiterated the applicable standard of review as follows:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and

- 3 -

legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights. The test for determining the voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession.

The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his **Miranda** rights.

**Id.** at 433-34 (internal quotations, citations, and footnote omitted). Further, as this Court recognized in **Harrell**, our Supreme Court has explained that the "touchstone inquiry" when deciding a motion to suppress a confession is "whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession." **Id.** at 434 (quoting **Commonwealth v. Nester**, 709 A.2d 879, 882 (Pa. 1998)). "The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily." **Id.**

When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Id.* (citations omitted). "The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." *Id.* (quoting *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002) (citing *Nester*, 709 A.2d at 882)).

Appellant complains he was awakened by police at 6:30 a.m., was detained and taken to the police station, but remained segregated and was not questioned until approximately 2:30 p.m. He complains he was clothed in nothing but gym shorts and a blanket and was not offered clothing until nearly three hours of interrogation had elapsed. He contends the detectives used Appellant's relationship with Jamie by playing off the detectives' description of her statements against him. He claims he was under physical and emotional pressures that affected his ability to give statements voluntarily. Appellant's Brief at 22-23.

A review of the November 4, 2015 hearing transcript reveals that Appellant was awakened when police arrived at the home of Jamie's parents at approximately 6:30 a.m. on March 15, 2016. The officers discovered Appellant in bed with Jamie in her bedroom after Jamie's father gave detectives permission to search the home for other persons, believing that no one else was in the residence.

Appellant, Jamie, and Jamie's father were transported to the police station at approximately 8:15 a.m. The detectives first interviewed Jamie's father, who was unaware of Appellant's existence until that morning,

beginning around 9 a.m. They next questioned Jamie, but not until approximately 11:30 a.m., after Jamie's grandmother arrived from Jim Thorpe and had an opportunity to talk with Jamie privately. Detectives then questioned a friend of Jamie's, whom Jamie identified during her interview. Jamie's friend related that she was with Jamie a week earlier while Jamie talked on a speaker phone with Appellant about killing Jamie's parents.

Appellant's interview began between 2 p.m. and 2:30 p.m. He was read his **Miranda** rights and signed the form.[3] Any delay in initiating Appellant's interview was justified under the circumstances in light of the other interviews that took place and the delay while awaiting the arrival of Jamie's grandmother.

Detective Heffelfinger, who was involved in the interviews and testified for the Commonwealth at the November 4, 2015 hearing and at trial, testified that Appellant was angry but seemed fine. He explained that there was no yelling or arguing and the interview was cordial, despite disagreements.

It is true that Appellant was dressed in gym shorts when he arrived at the police station. He was also wearing a jacket that was taken as evidence. He was given a blanket when the jacket was taken. The testifying officer explained that he asked Appellant—before leaving Jamie's house—if he had any clothes. Appellant said he had some clothes in his car but refused the

_____

[3] **Miranda v. Arizona**, 386 U.S. 436 (1966).

detective's offer to retrieve clothing for him. (He also had clothes that were in the washing machine at Jamie's home.)

As the trial court explained in its November 17, 2015 and November 7, 2016 opinions,[4] Appellant was given his **Miranda** warnings, he spoke English and appeared to understand the questions presented to him, although he appeared angry. The detectives did not attempt to intimidate, threaten or coerce Appellant. They explained to Appellant that the purpose of the interview was to discuss the circumstances of the prior evening. He was provided the opportunity to drink, eat and use the restroom, although a bathroom request was delayed so that State Police could perform a physical exam before Appellant washed his hands. During the course of his interview, Appellant never indicated a desire to end the interview and did not ask to speak with an attorney.

We find the record supports the trial court's factual findings and the legal conclusions drawn from those findings, specifically, that the totality of the circumstances confirm Appellant knowingly and voluntarily gave the statements he now claims were involuntary. Appellant's challenge to the voluntariness of his statements fails.

---

[4] **See** Trial Court Opinion, 11/17/15, at 21-25, and Trial Court Opinion, 11/7/16, at 31-36.

In his second through sixth issues, Appellant challenges various evidentiary rulings made by the trial court. Our standard of review regarding evidentiary issues is well-settled.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012) (internal quotations and citations omitted).

In his second issue, Appellant argues the trial court erred by allowing the Commonwealth to "role-play" by having attorneys from the district attorney's office and other individuals read into the record text messages between Appellant and Jamie. With the exception of two cases cited generally for propositions related to admissibility, Appellant's argument does not include any citation to legal authority, despite the recognized duty of an appellant to support claims with citations to legal authorities. *See In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012).

Appellant acknowledges the common practice of individuals reading evidence, such as deposition testimony. However, he argues that the situation before us is different because it was not certain whether either Appellant or Jamie would testify at trial. Appellant's Brief at 25. Appellant does not dispute

the admissibility of the text messages but rather is concerned that the "role-players had an active interest in the results of this case" and questioned "their ability to put those interests aside so as to present [] unbiased and untainted verbal testimony[.]" *Id.* at 26. "The effect on the jury in seeing the prosecutors playing these roles would go beyond the benefit received through the simple admission of the text messages." *Id.*

The trial court dismissed Appellant's concerns and objections to the reading of the text messages, explaining:

> This court notes that reading the text messages was a proper way to get them before the jury, and did not violate the law, including the best evidence rule. It should be noted that prior to the reading of the texts to the jury, this court admonished all of the participants that they were not allowed to use any inflection when reading the texts. They were specifically told by this court to simply read the words of the texts without any expression, stress intonation, or emphasis so as not to express a mood or feeling. Furthermore, this court instructed the jury that the written texts were the evidence that they were to consider. This court explained that the reading of the texts was solely a means to get the information to them. As all of the texts were properly authenticated prior to being shown and read to the jury, [Appellant's] argument is baseless.

Trial Court Opinion, 11/7/16, at 45 (capitalization omitted). We agree. Recognizing a trial judge's broad powers in conducting a trial, *see, e.g., Commonwealth v. Parker*, 919 A.2d 943, 949 (Pa. 2007), and further recognizing the trial court's admonition to the participants and to the jury, we find no abuse of discretion on the part of the trial court. Appellant's second issue fails.

In his third issue, Appellant contends the trial court erred by permitting the Commonwealth to use a "PowerPoint" presentation in its opening statement, allowing the jury to view items that "may or may not be admitted into evidence or to otherwise highlight certain evidence [that] may or may not be presented." Appellant's Brief at 7-8. In **Parker**, our Supreme Court considered whether the trial court abused its discretion in permitting a prosecutor to display a handgun during his opening statement.[5] The Court noted:

> Because it is axiomatic that a trial judge has broad powers concerning the conduct of a trial, we review the trial court's decision to allow the prosecutor to display a gun during opening statements for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

**Id.** at 949-50 (internal quotations, citations, and footnote omitted). In assessing whether the trial court abused its discretion, the Court acknowledged that "[t]he purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." **Id.** at 950 (quoting **Commonwealth v.**

---

[5] On appeal, this Court concluded the trial court abused its discretion but determined the error was harmless. **Commonwealth v. Parker**, 882 A.2d 488, 490 (Pa. Super. 2005). Both parties sought an appeal to our Supreme Court, which affirmed this Court's decision, albeit on different grounds, after determining the trial court was within its discretion to permit the prosecutor to display the handgun.

*Montgomery*, 626 A.2d 109, 113 (Pa. 1993) (additional citation omitted)).

"A prosecutor's statements must be based on evidence that he plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions." *Id.* (citing *Commonwealth v. Begley*, 780 A.2d 605, 626 (Pa. 2001) (additional citation omitted)). "A prosecutor's opening statements may refer to facts that he reasonably believes will be established at trial." *Id.* (citing *Begley*, 780 A.2d at 626).

The trial court rejected Appellant's claim of error, noting the Commonwealth presented a motion *in limine* prior to trial, asking the trial court to rule on certain admissibility issues. The trial court determined "the attorney for the Commonwealth did not present anything within the power point presentation that he knew was not going to ultimately be shown to the jury." Trial Court Opinion, 2/13/17, at 8. The trial court "considered [Appellant's] argument and appropriately ruled that the power point presentation would not leave the jury with the false impression that it was evidence." *Id.* at 8-9. We agree. We find no abuse of discretion in permitting the PowerPoint presentation. Appellant's third issue fails.

In his fourth issue, Appellant contends the trial court erred by allowing Detective Heffelfinger to testify that Jamie's friend, C.E., overheard Appellant and Jamie planning the homicide, in light of the fact C.E. was available to testify, and in fact did testify. Essentially, Appellant contends that the detective's testimony "emphasized a critical piece of testimony" creating

prejudice that "could not be diluted or eliminated simply by the [c]ourt's jury instruction." Appellant's Brief at 31-32.

> The trial court explained:
>
> Prior to eliciting such statement from Detective Heffelfinger, the attorney for the Commonwealth approached the bench to inform the court and defense counsel that [Jamie] said that she had a conversation about killing her parents with [Appellant] about one week prior to the incident, during which her juvenile friend, C.E., was present. The Commonwealth wanted to elicit this statement not for the truth of the matter, but to show a course of conduct on the part of Detective Heffelfinger. The Commonwealth explained that the statement was necessary to have the jury understand the reason why C.E. was interviewed in relation to this case at the [police department]. This court confirmed that C.E. would be testifying at a later point in the trial and that the jury would hear the same testimony from her. Consequently, this court did not find that the introduction of this one statement was prejudicial to [Appellant]. In fact, this Court concluded that it had great probative value and was informative. In addition, in an abundance of caution, this court agreed to provide a cautionary instruction to the jury after the one question was asked by the Commonwealth and answered by Detective Heffelfinger. . . . This cautionary instruction was provided to the jury and clearly explained the reason for its admission. In light of the foregoing, this court did not commit an error [of] law or an abuse of discretion.

Trial Court Opinion, 2/13/17, at 12-13 (capitalization omitted). We agree. We find no abuse of discretion in permitting the detective's hearsay statement to explain the sequence of events and how C.E. happened to be interviewed at the police station. Further enforcing our conclusion is the fact C.E. testified as to the statement and the fact the trial court instructed the jury as to the limited purpose of detective's hearsay statement. Appellant's fourth issue lacks merit.

In his fifth issue, Appellant asserts error for limiting the defense's use of Jamie's taped statements in the course of conducting its examination of Jamie at trial. Appellant does not provide citation to any authority for his assertion other than a citation to Pa.R.E. 613, noting that the rule governs examination of a witness who has made a prior inconsistent statement. However, as the trial court explained, Appellant sought at trial to have Jamie's entire March 15, 2015 recorded interview played to the jury to demonstrate that it was different from her trial testimony. Trial Court Opinion, 11/7/16, at 47. The trial court refused the request, noting that the recorded interview could not be played unless and until Jamie offered trial testimony inconsistent with the recorded interview. *Id.* Further, in accordance with Rule 613, in the event of inconsistent testimony, only those portions of the recorded interview in conflict with the trial testimony would be played. *Id.*

As the trial court explained:

On the witness stand, [Jamie] candidly admitted that she lied during the March 15, 2015[] interview. She admitted, *inter alia*, that she lied about her age to [Appellant] and that she wanted him to lie to her mother about his age. She admitted that she lied to her lawyers, the police, the expert psychologists hired to render opinions in her decertification hearing, friends, family, and even strangers. She agreed with defense counsel on all salient points and never denied saying something contrary in the interview of March 15, 2015. As [Jamie] did not make a prior inconsistent statement to that to which she was testifying, [Appellant] was properly prohibited from playing the audiotape of [Jamie's] March 15, 2015[] interview to the jury.

*Id.*

We find no error or abuse of discretion on the part of the trial court in denying Appellant's request to play the interview audiotape to the jury. Appellant's fifth issue fails.

In his sixth issue, Appellant contends he sought sanctions for "the Commonwealth's having filed various applications or orders as well as presenting materials to the [c]ourt and having failed to serve [Appellant's counsel] with those materials." Appellant's Brief at 35. Appellant contends the Commonwealth failed in its obligation to serve Appellant various affidavits and orders and that trial court erred in permitting the Commonwealth's actions. *Id.*

Appellant makes this argument in conjunction with his seventh issue, arguing the trial court erred in denying his motion for recusal based upon the Commonwealth's failure to serve documents on Appellant and the Commonwealth's *ex parte* presentation of a binder of materials to the trial court, prior to presenting the corresponding binder to Appellant's counsel. *Id.* at 36-37. He contends the Commonwealth presented the offending materials to the trial court in open court during a break in proceedings unrelated to Appellant's case. Appellant argues that the *ex parte* interaction, "which may have been harmless in its result, nonetheless gives an appearance of bias through the interactions between the Commonwealth[] and the [t]rial [c]ourt." Appellant's Brief at 38.

As the trial court explained, Appellant's counsel and counsel for the Commonwealth met on July 7, 2016 to discuss evidentiary matters in advance of trial. Trial Court Opinion, 11/7/16, at 36. This meeting took place after Jamie entered a guilty plea. With her case resolved, it was severed from Appellant's case. *Id.* The trial court explained:

> At this meeting, [the] Commonwealth mentioned that there were orders and affidavits sealed that the defense counsel should view just for record purposes. Despite being advised of this, defense counsel did not immediately attempt to view the sealed orders. In fact, it was not until July 28, 2016, that [Appellant] filed a motion for the sealed orders to be made available to him. These orders concern issues involving co-defendant Jamie [], whose criminal matter was severed from [Appellant's] case. Therefore, it was not necessary to provide [Appellant] with notice of same. The one issue that involved [Appellant] concerned monitoring his incoming and outgoing mail while he was housed in Lehigh County Jail. With regard to these sealed orders, [Appellant] was not prejudiced in any way by not being served notice of same. Indeed, [Appellant] had access to all of his mail, as none of the mail was intercepted but for one piece, of which [Appellant] was aware. . . . Nothing improper was done by this court or the Commonwealth. . . . At most, the lack of notice could be viewed solely as a *harmless* error.

Trial Court Opinion, 11/7/16, at 36-37 (some capitalization omitted).

In **Commonwealth v. Blakeney**, 946 A.2d 645 (Pa. 2008), our Supreme Court reiterated:

> "[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned." **Commonwealth v. Goodman**, 454 Pa. 358, 311 A.2d 652, 654 (1973). It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. **Commonwealth v. Druce**, 577 Pa. 581, 848 A.2d 104, [109] (2004). "Where a jurist rules that he or she can hear and

dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion." ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 720 A.2d 79, 89 (1998).

***Id.*** at 662.

Here, the trial court acknowledged receipt of the binder from the Commonwealth on July 19, 2016 and detailed its contents. Trial Court Opinion, 11/7/16, at 39-40. The trial court explained:

> When counsel for the Commonwealth presented this binder to the court, he took a few minutes to explain how the binder was laid out and the purpose behind it. The prosecutor's intent was to deal with the issues prior to the commencement of the trial in order to have the trial flow more smoothly once it began. A copy of this same binder was shortly thereafter provided to defense counsel to alert him to potential evidentiary issues that could arise during trial. There was no nefarious intent behind the presentation of this binder to the court prior to providing a copy to [Appellant]. Additionally, this court did not discuss any substantive matters with regard to the within case with the attorney for the commonwealth at this time. This court merely summarily perused the documents presented and gain[ed] an understanding of their arrangement within the binder.

***Id.*** at 40. After citing legal principles regarding recusal similar to those set forth above in the excerpt from ***Blakeney***, the trial court continued, stating:

> This jurist conscientiously considered the within recusal request. However, based on the undersigned's ability to assess the case in an impartial manner, free of personal bias or interest in the outcome, as well as the determination that this judge's continued involvement in the case would not create an appearance of impropriety nor would tend to undermine public confidence in the judiciary, this court found [Appellant's] recusal request to be unwarranted. Accordingly, [Appellant's] motion for recusal was properly denied.

***Id.*** at 41.

Based on our review, we cannot say that the trial court erred in failing to impose sanctions on the Commonwealth for failure to give notice of the various applications, affidavits, etc., or that the trial court abused its discretion by denying Appellant's motion for recusal. Therefore, Appellant's final two issues fail.

Because Appellant is not entitled to relief on any of the issues raised in this appeal, we affirm his judgment of sentence. In the event of further proceedings, the parties shall attach a copy of the trial court's November 7, 2016 opinion for its summary of the testimony and evidence presented at trial.[6]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/18

_____

[6] **See** Trial Court Opinion, 11/7/16, at 6-27.