485 A.2d 761

McADOO BOROUGH, Appellee,

v.

COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,

Teamsters Local Union No. 401, Intervenor-Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 23, 1984.

Decided Dec. 21, 1984.

James L. Crawford, Kathryn S. MacNett, Harrisburg, for appellant.

Joseph P. Semasek, McAdoo, for McAdoo Borough.

Richard M. Goldberg, Stephen A. Menn, Wilkes-Barre, for Teamster Local 401.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The issue in this appeal[1] is whether a borough council member who belongs to the same union as the borough's public employees and has participated as representative of the borough in negotiating collective bargaining agreements between the borough and those employees is precluded from voting on the ratification of agreements pursuant to the Public Employe Relations Act ("PERA"), Act of July

[1]. This Court is vested with jurisdiction pursuant to 42 Pa.C.S. § 724(a).

23, 1970, P.L. 563, No. 195, *as amended,* 43 P.S. §§ 1101.-101–1101.2301 (Supp.1984–85) and Act 111, Act of June 24, 1968, P.L. 237, No. 111, *as amended,* 43 P.S. §§ 217.1–217.-10 (Supp.1984–85). The Commonwealth Court, reversing the Pennsylvania Labor Relations Board ("Board"), concluded that the council member's participation in the ratification proceedings was improper and declared the agreements invalid. For the reasons which follow we reverse the Commonwealth Court and reinstate the Board's order.

## I.

McAdoo Borough ("Borough") and Teamsters Local Union No. 401 ("Local 401"), which represented both the Borough's nonprofessional employees and its full-time and regular part-time police officers, entered into one-year collective bargaining agreements as to both units on January 1, 1982.[2] The Borough had been represented during negotiations by a committee consisting of the president, vice-president and two members of the Borough Council. One of the council members participating in the negotiations on behalf of the Borough was Hubert Hartz, a member of Local 401. Mr. Hartz was not a public employee but rather worked for the Consolidated Cigar Corporation in McAdoo. The agreements were ratified by the same council members who participated in the negotiations; the remaining three members of the seven-member council were noted as absent.

Notwithstanding its apparent ratification of the collective bargaining agreements, however, the Borough refused to implement the wage or hospitalization provisions of either agreement or the seniority provisions of the agreement with the police officers. In response Local 401 filed unfair labor practice charges with the Board against the Borough with

2. Local 401 was certified as the exclusive bargaining representative of the Borough's non-professional employees on January 7, 1982. The record indicates that Local 401 was not so certified as to the police officers' unit during the time period material herein. The Board's hearing examiner stated for the record, however, that Act III does not require such certification. That determination has not been challenged herein.

respect to both agreements. The Board subsequently issued complaints against the Borough and consolidated the charges for hearing before a hearing examiner. After a hearing the examiner issued a preliminary order and decision holding that the Borough had committed unfair labor practices under section 1201(a)(1) and (5) of PERA, 43 P.S. § 1101.1201(a)(1), (5) (Supp.1984–85) and section 6(1)(e) of the Pennsylvania Labor Relations Act ("PLRA"), Act of June 1, 1937, P.L. 1168, No. 294, § 6(1)(e), 43 P.S. § 211.-6(1)(e) (1964). After the Borough's exceptions had been dismissed the proposed order and decision was made final and absolute by order of the Board. The Borough appealed that order to the Commonwealth Court, which reversed the Board's decision.[3] *McAdoo Borough v. Commonwealth, Pennsylvania Labor Relations Board,* 79 Pa.Commw. 158, 469 A.2d 693 (1983). This Court granted the Board's petition for allowance of appeal.

## II.

■ Before reaching the merits of the instant conflict of interest issues we must address the Board's contention that the Borough is estopped to raise those issues by virtue of its failure to directly challenge the validity of the ratification of the collective bargaining agreements. The Board maintains that the Borough should not be permitted to assert the invalidity of the agreements as a defense to unfair labor practice charges because the Borough Council ratified the agreements even though "members" of the council knew at that time that Councilman Hartz was a member of Local 401.[4] While we have applied the doctrine of estoppel in circumstances wherein the employer, having voluntarily entered into a collective bargaining agreement,

---

3. Local 401 intervened in that action and has adopted the arguments of the Board on appeal to this Court.

4. The record reflects only that one participating council member was aware during negotiations that Mr. Hartz was a member of the Teamsters Union. Thus it is questionable whether the record would support a finding that the employer knew of the conflict at the time of ratification.

belatedly attempts to avoid compliance by raising as a defense the illegality of the agreement's terms, *see, e.g., Fraternal Order of Police, E.B. Jermyn Lodge v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982) (plurality opinion); *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), here we are presented with the question of whether the employer did in fact enter into the agreements in the first instance, that is, whether the ratification vote by the Borough Council was itself legitimate. The latter situation is clearly distinguishable from one in which the employer enters into an agreement with knowledge of its illegality. The record fails to establish that the three voting members other than Mr. Hartz were aware of his membership in Local 401. Thus it cannot be said that the ratification vote represented an acquiescence in the alleged conflict of interest. We therefore reject the Board's estoppel claim and will decide the case on its merits.

### III.

The collective bargaining agreement between the Borough and its non-professional employees is governed by PERA, which contains a specific provision concerning conflicts of interest in the negotiating process. 43 P.S. § 1101.1801 (Supp.1984–85). The Borough's agreement with its police officers, however, is controlled by Act 111 and PLRA, *see Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), neither of which addresses such conflicts. For the sake of clarity, therefore, the conflict issues regarding the two agreements will be considered separately.

### A.

■ The starting point in our analysis of the non-professional employees' contract is section 1801 of PERA, 43 P.S. § 1101.1801 (Supp.1984–85), which provides:

(a) No person who is a member of the same local, State, national or international organization as the em-

ploye organization with which the public employer is bargaining or who has an interest in the outcome of such bargaining which interest is in conflict with the interest of the public employer, shall participate on behalf of the public employer in the collective bargaining processes with the proviso that such person may, where entitled, vote on the ratification of an agreement.

(b) Any person who violates subsection (a) of this section shall be immediately removed by the public employer from his role, if any, in the collective bargaining negotiations or in any matter in connection with such negotiations.

It cannot be disputed that Councilman Hartz was "a member of the same local ... as the employe organization with which the [the Borough was] bargaining." As such, he should not have participated with the three other members of the committee in the negotiations and should have been removed by the Borough pursuant to section 1801(b), 43 P.S. § 1101.1801(b) (Supp.1984–85), from his role as negotiator.

■ However, the question here is whether or not Mr. Hartz's involvement in the negotiations affects his right to participate in the ratification of this agreement. Section 1801(a) contains the explicit proviso that persons who, like Mr. Hartz, are members of the same local as the employee bargaining unit, "may, where entitled, vote on the ratification of an agreement." 43 P.S. § 1101.1801(a) (Supp. 1984–85). The statute on its face does not appear to limit the applicability of the proviso to persons who comply with its disqualification provisions. Although it is not urged that such a condition should be read into section 1801(a), we feel it is nonetheless appropriate to examine the purposes underlying that section in order to determine whether such a literal reading is consistent with the legislature's intent.[5]

5.  It is well settled that this Court may affirm for any reason and is not limited to grounds raised by the parties. *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980); *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975); *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d

Section 601 of PERA, 43 P.S. § 1101.601 (Supp.1984–85), explicitly authorizes public employers to "select representatives to act in their interest in any collective bargaining with representatives of public employes." We must assume that the public employer will make every attempt to select suitable representatives and to ascertain whether potential negotiators possess conflicts of interests which may adversely affect its position in the bargaining process. Section 1801(a) not only prohibits participation by employer representatives with interests in conflict with those of the employer but goes further by requiring the disqualification of negotiators for the public employer solely on the basis of affiliation, however tenuous, with the employee bargaining unit. This *per se* rule serves to obviate even the appearance of impropriety in the negotiations and thus ensures finality in the public sector collective bargaining process by foreclosing collateral attacks on the validity of ratified agreements.

Removal by the public employer pursuant to section 1801(b) of any negotiator disqualified under section 1801(a), has been characterized as the employer's sole "remedy." *See Commonwealth v. Pennsylvania Labor Relations Board,* 40 Pa.Commw. 468, 397 A.2d 858 (1979); *Pennsylvania Labor Relations Board v. Eastern Lancaster School District,* 11 Pa.Commw. 482, 315 A.2d 382 (1974); *Ellwood City Area School District v. Secretary of Education,* 9 Pa.Commw. 477, 308 A.2d 635, 637 (1973). We agree with that interpretation. A public employer's failure to avail itself of the remedy of removal should not work to the detriment of the collective bargaining process. If the public employer chooses a negotiator barred from participation under section 1801(a) and fails to ascertain the existence of a legislatively proscribed conflict during the course of the bargaining proceedings, it should not be heard to complain that its former negotiator should not be permitted to vote as a public official on the ratification of the

94 (1974); *Prynn Estate,* 455 Pa. 192, 315 A.2d 265 (1974); *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970).

ultimate agreement. Thus we conclude that the legislature did not intend to make the proviso in section 1801(a) contingent upon compliance by the negotiator with its conflict of interest provisions.

It remains to be determined whether councilman Hartz was "entitled" to vote on the ratification of the agreements within the meaning of that term under section 1801(a). The Commonwealth Court interpreted entitlement to vote for purposes of that section as turning on ethical considerations. Purporting to apply the principle that a councilman may not vote on any matter in which he or she has a personal or pecuniary interest, *Meixell v. Hellertown Borough Council,* 370 Pa. 420, 88 A.2d 594 (1952), that court summarily concluded that Mr. Hartz's membership in Local 401 created a personal interest in the outcome of the bargaining and he was thus not "entitled" to vote.

The effect of such an interpretation is to read section 1801(a)'s proviso out of existence; no public official having a conflict of interest as defined in section 1801(a) would be permitted to vote on the ratification of a collective bargaining agreement even if he or she refrained from participation in the bargaining process. Such a reading is not only directly contrary to the express language of the section's proviso but also ignores the legislature's requirement that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

■ The only reasonable interpretation of the term "entitled" in the context of the statute is "entitled" *by virtue of public office.* Section 1801(a) simply recognizes that some negotiators disqualified from participating in the bargaining process may also be public officials charged with the responsibility of approving or disapproving the final agreement. It places no additional conditions upon the right of such officials to vote. The thrust of the proviso is that section 1801(a) concerns the integrity of the *bargaining* process. Mr. Hartz as a member of the Borough council was entitled to vote on the non-professional employees' contract. Act of February 1, 1966, P.L. (1965) 1656, No.

581, § 1006(3), *as amended,* 53 P.S. § 46006(3) (Supp.1984–85). Since section 1801 provides no basis for the invalidation of Mr. Hartz's vote, the collective bargaining agreement between the Borough and its non-professional employees, ratified by a majority of the members of the Borough Council, was valid and enforceable. Thus there was no basis for the Borough's non-compliance with the terms of the agreement and the Board correctly concluded that the Borough's refusal to implement the agreement was an unfair labor practice.

B.

It remains to be determined whether Mr. Hartz's membership in Local 401 provides a basis for the invalidation of his vote to ratify the Borough's agreement with its police officers. As we indicated above, neither Act 111 nor PLRA contains a conflict of interest provision. It is therefore necessary to evaluate the purported conflict in light of the case law governing the conduct of borough council members.

The controlling principle developed by our case law is that a council member is disqualified from voting in any matter or proceeding where he or she has a *direct personal or pecuniary interest. Consumer Education and Protective Association v. Schwartz,* 495 Pa. 10, 432 A.2d 173 (1981); *Raynovich v. Romans,* 450 Pa. 391, 299 A.2d 301 (1973) (plurality opinion); *Meixell v. Hellertown Borough Council, supra; Genkinger v. New Castle,* 368 Pa. 547, 84 A.2d 303 (1951); *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A.2d 686 (1941); *Commonwealth v. Raudenbush,* 249 Pa. 86, 94 A. 555 (1915). We find nothing in the instant record which would establish such an interest on the part of Mr. Hartz. It has not been shown that Mr. Hartz's membership in Local 401 created any tangible interest in the ratification of the instant agreement.[6] It would strain credulity to maintain that Mr. Hartz, a private sector

---

**6.** We reiterate that Mr. Hartz worked in private industry and was not a public employee.

employee, could benefit from the terms and conditions of employment established for Borough police officers merely because he was a member of the local which represented them in the contract negotiations. Thus we conclude that it was not improper for Mr. Hartz to vote to ratify the police officers' agreement. That agreement was therefore properly ratified and binding upon the Borough and its non-compliance was properly determined by the Board to be an unfair labor practice.

Accordingly, the order of the Commonwealth Court is reversed and the order of the Pennsylvania Labor Relations Board is reinstated.