919 A.2d 943

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Maurice PARKER, Appellee.**

**Commonwealth of Pennsylvania, Appellee,**

**v.**

**Maurice Parker, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 1, 2006.

Decided April 18, 2007.

Hugh J. Burns, Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

MaryAnn F. Swift, Esq., Glenside, for Maurice Parker.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *MAJORITY OPINION*

Justice BALDWIN.

In this case, one of first impression for this Court, we review whether it is proper for a prosecutor to display a potentially inflammatory tangible piece of evidence to the jury during his opening statement. The Superior Court held that allowing the prosecutor to show the jury a handgun during his opening statement was an abuse of the trial court's discretion. *Commonwealth v. Parker*, 882 A.2d 488, 490 (Pa.Super.2005). Nonetheless, the Superior Court went on to find that the error was harmless. *Id.* at 494. Both parties sought allowance of appeal from the respective adverse rulings.[1] We consolidated the cases and granted allocatur. For the following reasons, we now affirm the Superior Court's decision to affirm the judgment of sentence, albeit on different grounds.

During the late hours of April 2, 2002, Ms. Sheila Crump accepted a ride from her brother, Dwayne Crump, and his friend, James Washington, to a local store. Upon arrival at the store, Ms. Crump and her brother exited the vehicle and approached the entrance to the store. Maurice Parker, De-

---

1. The Commonwealth appealed from the Superior Court's holding that it was error for the trial court to allow the prosecution to display the gun during its opening statement. Parker appealed from the Superior Court's holding that the error was harmless.

fendant below, was exiting the store at the same time the Crumps were approaching. According to Ms. Crump, Parker and her brother gave each other an "odd look." *Id.* at 490. Ms. Crump remained outside of the store while her brother went inside.

Meanwhile, Parker approached James Washington and inquired into whether Dwayne Crump had "a problem" with him while lifting his shirt to reveal a handgun. *Id.* An argument arose between the two men that prompted Ms. Crump to enter the store and inform her brother of the developments. Dwayne Crump exited the store and told Parker that everything was "cool." *Id.* However, the argument continued until Parker removed the gun from under his shirt. Ms. Crump and her brother attempted to gain entry into the vehicle in which they had arrived through the passenger-side doors. Their attempt was thwarted when Parker began firing at the car from the driver's side, hitting Mr. Washington. Mr. Washington drove the vehicle from the lot and continued to the local hospital. According to Ms. Crump, Parker continued to fire the gun at the vehicle as it left the store until the gun ran out of bullets. Mr. Washington was treated at the hospital for multiple gunshot wounds.

Three days after the shooting, Ms. Crump was at the rental office of her apartment complex. She noticed that Parker was walking into the building located next to the rental office. She contacted the Housing Authority Police and informed them that she had located the shooter. Officers Stacey Alston and Rosalind Mason set up surveillance of the premises. A short time later, the officers saw Parker and his mother leaving the complex. They stopped him and determined that he was sixteen years old. The officers asked his mother if they could conduct further questioning about the incident in the community center of the complex.

For safety purposes and because of Parker's nervous and fidgety behavior, Parker was handcuffed during the questioning. Parker asked to use the restroom. His request was granted on the condition that his mother accompany him. Officer Alston remained immediately outside the restroom

door. While she waited for Parker, she heard a "loud crash" in the toilet and Parker's mother say, "What are you doing with that?" *Id.* at 491. The officers immediately entered the restroom, retrieved a loaded .38 millimeter revolver from the toilet, and arrested Parker. Parker was charged with attempted murder,[2] aggravated assault,[3] violations of the Uniform Firearms Act,[4] and possessing an instrument of a crime.[5] The case was set for trial on February 17, 2004.

Prior to trial, the prosecutor notified the trial court that he intended to show the gun recovered from the toilet to the jury during his opening statement. Defense counsel objected. Defense counsel argued that since the gun would be admitted later at trial, displaying the gun during opening statements would be unnecessary and prejudicial. The trial court found no Pennsylvania authority precluding a prosecutor from displaying a gun during the opening statement. Accordingly, the trial court denied the objection. The trial court did, however, instruct the jury that opening statements by the attorneys are not evidence, and are merely a mechanism by which jurors would learn the nature of the case, and what the attorneys intend to prove.

The Prosecutor displayed the revolver while making the following opening statement:

> While [Parker] was in the rest room one of the officers arranges so that she can look from an angle to make sure that nothing was happening. He was fidgety. The officer will testify that as she sees him fidget she hears a clunk, a thud sound. She pulls open the door and sitting inside the toilet is this particular weapon. And for the record, I have made it safe so there is nothing at this point to be concerned about. She seizes that weapon and takes him to the Central Detective Division.

2. 18 Pa.C.S. § 901.

3. 18 Pa.C.S. § 2702.

4. 18 Pa.C.S. § 6106.

5. 18 Pa.C.S. § 907.

N.T. 2/18/04, at 68–69. Following two days of testimony, the jury convicted Parker of the aforementioned crimes. The trial court sentenced Parker to seven and one-half to fifteen years of incarceration.

Parker appealed to the Superior Court. The court considered the sole issue of "whether the trial court abused its discretion in permitting, over a defense objection, the prosecutor to display a handgun in his opening statement." *Parker*, 882 A.2d at 490. Ultimately, that court held that the trial court abused its discretion by permitting the prosecutor to display the gun. However, as explained above, the Superior Court subsequently concluded that the error was harmless. *Id.* at 494–95.

Noting that this was an issue of first impression, the Superior Court resorted to the standard of review applicable to challenges to the admissibility of evidence in order to address the appeal. Under that standard, an appellate court may reverse a trial court only upon an abuse of discretion. *Id.* at 492 (citing *Commonwealth v. Lilliock*, 740 A.2d 237, 243 (Pa.Super.1999)). The Superior Court acknowledged that trial courts have broad discretion as to the admissibility of potentially misleading or confusing evidence. Further, a trial court may exclude relevant evidence where its probative value is outweighed by the danger of unfair prejudice or confusion. *Id.* (citations omitted).

Grafting the admissibility standard onto the unique question presented, the Superior Court determined that, "the definition of what constitutes admissible evidence must be viewed in conjunction with the purpose of opening statements in order to understand why allowing the prosecution to use the handgun in its opening statement constitutes an abuse of discretion." *Id.* at 492–93. The court noted that the purpose of an opening statement is to inform the jury of the background of the case, how it will proceed, and what each side will attempt to prove. Acknowledging that opening statements are not evidence, the court reasoned that opening statements "can often times be the most critical stages of the trial" where "the jury forms its first and often lasting impression of the case."

*Id.* at 493 (citing *Commonwealth v. Montgomery,* 533 Pa. 491, 498, 626 A.2d 109, 113 (1993)).

Commenting on the impact of opening statements on juries, the Superior Court found that it is of "paramount importance that the 'playing field' be level during the opening statement and that displays which may tend to prejudice the jury should be prohibited." *Id.* at 493. The panel acknowledged that, to date, no Pennsylvania court has prohibited a prosecutor from displaying a gun during opening statements. Nevertheless, the Superior Court concluded that the "use of the handgun by the prosecution in its opening statement served no purpose but to possibly influence the jury and predispose the jury to finding the accused guilty of the crimes charged." *Id.* Moreover, the Superior Court held that showing the gun to the jury "could not honestly be said to serve any legitimate purpose except to inflame the jury, and therefore, the decision by the trial judge to permit such a display was unreasonable." *Id.*

In support of its decision, the Superior Court relied on commentary from the case law of our sister States, which disapproved of displaying tangible pieces of evidence during opening statements. *Id.* at 493–94 (citing *Guerrero v. Smith,* 864 S.W.2d 797, 799–800 (Tex.App.1993) (in a medical malpractice case, it was improper for the plaintiff's attorney to display a photograph of the plaintiff's injuries to the jury during opening statement); *Wimberli v. State,* 536 P.2d 945, 951 (Okla.Crim.App.1975) (criticized prosecutor's display of a knife during opening statement, but held that no prejudice resulted from the display); and *People v. Williams,* 90 A.D.2d 193, 196, 456 N.Y.S.2d 1008 (N.Y.App.Div.1982) (reversible error where prosecutor pulled a sawed-off shotgun from under his clothing during opening statement)). However, in two footnotes, the court cited cases that are inapposite to its decision. *Parker,* 882 A.2d at 494 n. 4 (citing *Sherley v. Commonwealth,* 889 S.W.2d 794, 799 (Ky.1994) (permitting a prosecutor to display a photograph of the victim recovering in a hospital bed because the photograph was admissible to show how the injuries were sustained); and *People v. Green,* 47 Cal.2d 209, 214–15, 302 P.2d 307, 311–12 (1956) (allowing the use of

534

photographs of the murder victim and the defendant in prison garb during opening statements because the display might aid the purpose of opening statements)).[6]

In light of the decisions by other states, the Superior Court held that the trial court erred in permitting the prosecutor to display the gun during his opening statement. In doing so, the court stated, "the sight of the gun may possibly have created uneasiness, if not outright repulsion, among the jurors." *Parker*, 882 A.2d at 494. Nonetheless, given the overwhelming amount of evidence of Parker's guilt, the court held that the error was harmless. *Id.* at 494–95.

Judge Olszewski concurred in the result but disagreed with the analysis the majority employed to reach that result. He found no practical difference between a prosecutor describing the gun in great detail, which is permitted, and actually displaying the gun to the jury. Neither method constitutes evidence, but rather, both are descriptions of the evidence that will be presented at trial. Because in this case the jury would see the evidence later, and there was no dispute over its admissibility, the prosecutor's display of the weapon during his opening statement was merely "oratorical flair." Judge Olszewski, thus, concluded that the display of the actual gun cannot be said to have prejudiced Parker in any way. *Id.* at 495–96.

As noted, the Commonwealth sought allowance of appeal from that portion of the Superior Court's opinion which held that the brief display of the gun to the jury during the prosecution's opening was an abuse of discretion. Alternatively, Parker sought allowance of appeal from that portion of the Superior Court's decision which held that the trial court error was harmless. We granted allocatur to consider whether it is proper for a prosecutor to display a tangible piece of evidence, in this instance a handgun, to the jury during opening statements. Further, we note that an appellate court has the ability to affirm a valid judgment or verdict for any reason

6. The Superior Court did not attempt to distinguish the contrary decisions nor explain why it found them less persuasive than the cases cited in the body of its opinion.

appearing as of record. *See generally Commonwealth v. Katze,* 540 Pa. 416, 425, 658 A.2d 345, 349 (1995) (opinion divided on other grounds); *McAdoo Borough v. Commonwealth, Pa. Labor Relations Bd.,* 506 Pa. 422, 428 n. 5, 485 A.2d 761, 764 n. 5 (1984); *E.J. McAleer & Co., Inc. v. Iceland Prods., Inc.,* 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977); *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 145–46, 189 A.2d 271, 274–75 (1963); *Sherwood v. Elgart,* 383 Pa. 110, 115, 117 A.2d 899, 901–02 (1955).

■ The Commonwealth rejects the Superior Court's holding that the trial court abused its discretion. The Commonwealth also takes issue with the Superior Court's use of the decisions of other jurisdictions because it finds Pennsylvania case law that should have controlled the outcome of the matter *sub judice.* Moreover, even if the use of the law of other jurisdictions was appropriate, the Commonwealth contends that the Superior Court misinterpreted and misapplied those cases.

According to the Commonwealth, Pennsylvania law does not reflect the Superior Court's "repulsion" towards guns. *See Commonwealth v. McAndrews,* 494 Pa. 157, 430 A.2d 1165 (1981) (trial court did not abuse its discretion by allowing the prosecutor to use a gun as part of a demonstration even though the actual murder weapon had been suppressed); and *Commonwealth v. Harris,* 492 Pa. 389, 424 A.2d 1245 (1981) (trial court did not abuse is discretion in allowing the jury to briefly view a gun similar to the gun used in the crime alleged). The mere sight of a gun is hardly uncommon, and not inflammatory. More importantly, the display of a gun during opening statements is not prohibited by any Pennsylvania statute, rule of court, or decision, provided that the gun is relevant and admissible. Here, there was no question as to the admissibility of the gun and the trial court granted the prosecutor permission to display the gun prior to trial. The Commonwealth posits that as long as criminals continue to use guns in a criminal fashion, prosecutors should be permitted, with leave of court, to show such evidence to the jury in the Commonwealth's opening statement.

Parker, on the other hand, argues that the Superior Court was correct in finding that the display of the gun could not honestly be said to serve any legitimate purpose other than to inflame the passions of the jury. He offers four distinct points to support his argument: First, Parker asserts that because the weapon had not been recognized as evidence, regardless of whether it would be subsequently admitted, its existence is, at best, theoretical. Parker's Brief at 14. Second, since "opening statements are not considered evidence and jurors are routinely cautioned to regard those statements as non-evidence, it logically follows that actual evidence, that will be entered during trial, should not be used prematurely." *Id.* (emphasis omitted). Third, Parker contends that using potentially inflammatory evidence in an opening statement, "gives the State an unfair advantage where jurors are more likely to consider the prosecutor, an agent of the state, to be more credible than the defense attorney who is less likely to be the party using the inflammatory prop in his opening statement." *Id.* Finally, according to Parker, without a clear statement of the limits of using inflammatory props from this Court, "the instant decision of the Superior Court opens the door to offensive displays whose potential prejudice to the accused will be trivialized by the appellate contention that the [error was harmless because the] 'evidence of guilt was overwhelming' " *Id.*

 We begin with the standard of review. Because "[i]t is axiomatic that a trial judge has broad powers concerning the conduct of a trial . . .", we review the trial court's decision to allow the prosecutor to display a gun during opening statements for an abuse of discretion. *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369, 1376 (Pa.Super.1980).[7] "An abuse of discretion may not be found merely

7. Indeed, a trial court's broad discretion over the conduct of a trial encompasses a variety of circumstances. *See Commonwealth v. Gibson*, 547 Pa. 71, 88, 688 A.2d 1152, 1160 (1997) (scope of cross-examination within sound discretion of the trial court); *Commonwealth v. Sallade*, 374 Pa. 429, 434, 97 A.2d 528, 530 (1953) (decision of whether a jury should be allowed to see the crime scene lies within the discretion of the trial court); *Commonwealth v. Ford*, 451 Pa. 81, 85, 301 A.2d 856,

because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Dengler,* 586 Pa. 54, 65, 890 A.2d 372, 379 (2005) (citing *Grady v. Frito-Lay, Inc.,* 576 Pa. 546, 560, 839 A.2d 1038, 1046 (2003)).

 To determine whether the trial court abused its discretion, we begin with a brief examination of opening statements. "The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Montgomery,* 533 Pa. 491, 498, 626 A.2d 109, 113 (1993) (citing *Commonwealth v. Nelson,* 311 Pa.Super. 1, 456 A.2d 1383 (1983)). In *Montgomery,* we acknowledged that "as a practical matter the opening statement can often times be the most critical stage of the trial, because here the jury forms its first and often lasting impression of the case." *Montgomery,* 533 Pa. at 498, 626 A.2d at 113. The prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. *Commonwealth v. Jones,* 530 Pa. 591, 607, 610 A.2d 931, 938 (1992). Such latitude is not without limits.

██ "A prosecutor's statements must be based on evidence that he plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions." *Commonwealth v. Begley,* 566 Pa. 239, 274, 780 A.2d 605, 626 (2001) (citing *Jones, supra).* A prosecutor's opening statements may refer to facts that he reasonably believes will be established at trial. *Id.*

██ As the Superior Court correctly noted, no statute, rule of procedure, or case law in Pennsylvania specifically precludes a prosecutor from displaying a tangible piece of evidence to the jury during an opening statement as long as that

858 (1973) (admission of demonstrative evidence, such as the alleged murder weapon, is within the discretion of the trial court); and *Commonwealth v. Rucci,* 543 Pa. 261, 283, 670 A.2d 1129, 1140 (1996) (whether to grant request for change of venue or venire is within the discretion of the trial court).

evidence will eventually be admitted without objection. *Parker*, 882 A.2d at 493. Although Parker urges this Court to create a rule barring tangible pieces of evidence from being displayed during an opening statement, we see no reason to craft such a rule. Indeed, where the tangible piece of evidence falls within the scope of material the prosecutor intends to introduce at trial and its display during the opening argument does not inflame the passions of the jury, the display of that piece of evidence is wholly proper.[8] Accordingly, we cannot agree with the Superior Court that the trial court abused its discretion by allowing the prosecutor to display to the jury a tangible piece of evidence where the decision was in contravention to no Pennsylvania rule of law, where the evidence was within the scope of the evidence the prosecutor intended to introduce at trial, and where there was no question as to its admissibility.

We also cannot agree with the Superior Court that "the use of the handgun by the prosecution . . . served no purpose but to possibly influence the jury and predispose the jury to finding the accused guilty of the crime charged." *Parker*, 882 A.2d at 493. The court continued, "the display of the gun could not honestly be said to serve any legitimate purpose except to inflame the jury. . . ." *Id.* The findings of the Superior Court, however, ignore the purpose of opening statements. Again, that purpose is to apprise the jury of the facts and evidence that the prosecutor intends to prove. *See Montgomery supra.* Undoubtedly, it is legitimate during opening statements for a prosecutor, or defense counsel for that matter, to verbally describe, in detail, the evidence he intends to prove, including tangible pieces of evidence. We fail to see the distinction between verbally describing that evidence and physically picking up the evidence and displaying it to the jury as the attorney describes what he intends to prove with regard to that particular piece of evidence. The Superior Court's assertion that showing the gun to the jury in the instant case served no legitimate purpose is misguided.

8. Of course, the scope of the material is limited to evidence that the prosecutor believes, in good faith, will be available and admissible. *Commonwealth v. Fairbanks*, 453 Pa. 90, 95, 306 A.2d 866, 868 (1973).

There is also nothing in the record to support the Superior Court's assertion that the display of the handgun during opening statements "created uneasiness, if not outright repulsion, among the jurors." *Parker*, 882 A.2d at 494. That assertion is belied by the fact that the gun was admissible evidence that would later be admitted into evidence and published to the jury during the prosecution's case-in-chief. It cannot be said that merely viewing a gun can create such "repulsion" during opening statements, but be perfectly tolerable when introduced during trial.

In sum, the trial court's decision to allow the prosecutor to display a gun during opening statements was well within its discretion.[9] We cannot find that the exercise of such discretion was the "result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Dengler, supra.* Accordingly, because the Superior Court ultimately upheld the judgment of sentence, we affirm the decision, albeit on different grounds.[10] Because we find no error in the trial court's decision, we need not review the Superior Court's application of the harmless error standard.

9. To be clear, however, permission from the trial court to display a piece of tangible evidence during a prosecutor's opening statement will not serve as a license to display tangible evidence in any way that prosecutor sees fit. While nothing prohibits a prosecutor from displaying admissible evidence, the manner by which the prosecutor conducts the display may itself constitute prosecutorial misconduct or result in a mistrial. For instance, where the display goes beyond permissible oratorical flair, is done in a flamboyant, erratic, or frightening manner, or where the prosecutor effectively converts himself into an unsworn witness, such actions may well result in a mistrial. By way of example, *see People v. Williams*, 90 A.D.2d 193, 196, 456 N.Y.S.2d 1008, 1010 (N.Y.A.D.1982). In *Williams*, the concealability of a gun was at issue. To demonstrate that it was possible to hide the gun, the prosecutor hid the sawed-off shotgun under his clothing and pulled it out during his opening statement. The Supreme Court of New York, Appellate Division found this reversible error, holding that the demonstration converted the prosecutor into an unsworn witness. That court concluded that the prosecutor's actions created a substantial likelihood that prejudice resulted that could never be dispelled from the minds of the jury. *Id.*

10. As noted, an appellate court may affirm a valid verdict or judgment for any reason appearing as of record.

540

Justice FITZGERALD did not participate in the consideration or decision of this case.

Chief Justice CAPPY and Justice SAYLOR, EAKIN and BAER join the opinion.

Justice CASTILLE files a concurring opinion in which Chief Justice CAPPY joins.

Justice CASTILLE, concurring.

I concur in the result.

I agree with the Majority that the display of the handgun in this case was not harmful, and I expressly join the Majority's finding that the Superior Court panel majority erred in its assessment that the only "purpose" behind such a display is to inflame and predispose the jury against the accused since, in the panel majority's view, the sight of a gun may create "uneasiness, if not outright repulsion, among the jurors." Majority at 539, 919 A.2d at 951. There is no basis for such assumptions, and I for one do not believe that jurors are so innocent, inexperienced, or squeamish that the mere sight of a handgun destroys their ability to reason. If this assertion was an accurate assessment of the impact on the jury, then, *a fortiori*, one could never introduce a firearm at the *trial* of the matter. It is for this reason, and not the strength of the evidence ultimately produced against Parker at trial, that I believe the display authorized by the trial judge provides no basis to upset the verdict.

Notwithstanding my agreement with the Majority concerning its assessment of the *effect* of the display in this case, I nevertheless write to express concern respecting the proper place of such displays in opening statements. The purpose of opening statements is limited, as the Majority correctly notes; this part of the trial is intended to apprise the jury of the background of the case, how the case will proceed, and what the parties will attempt to prove. *Id.* at 538, 919 A.2d at 950, citing *Commonwealth v. Montgomery*, 533 Pa. 491, 626 A.2d 109, 113 (1993). The opening statement is a roadmap, and not

a dry-run. It is a chance to outline and describe the prosecution (or defense) case, and not an opportunity to pre-try the matter. Trial courts routinely instruct juries that opening arguments are not to be considered evidence, *see, e.g., Commonwealth v. Begley,* 566 Pa. 239, 780 A.2d 605, 627 (2001), but this restraint is diluted by allowing the jury to view the actual instrument of the crime for which the defendant is on trial. In addition to the fact that there is always a risk that the piece of evidence the party would display may ultimately not be admitted at trial, there is the more fundamental administrative concern that the limited role of the opening *statement* is being abused. Perhaps lawyers feel that our society today has a shorter attention span than previous generations; or, perhaps, lawyers feel a need to entertain as much as to inform. Or it may be simply that lawyers seek to add drama to their otherwise dry presentations. But the courts need not bow down to such perceived necessities.

The Majority is correct that there is no statute, rule of procedure, or case law, which prohibits such displays. In addition, as I have already noted, I do not believe that such displays are inherently prejudicial. Nevertheless, as a supervisory matter, I believe that this Court should discourage such displays and should remind trial courts to enforce the important, but limited, purpose of the lawyers' opening arguments. *See Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 119 (2004) (relying, in part, on this Court's supervisory power over attorneys to fashion a judicial rule that it is impermissible to ask a jury to sentence a defendant in order to "send a message" to society). Thus, I cannot agree with the Majority's assessment that the display here was "wholly proper." Majority at 537–38, 919 A.2d at 950. Whether proper or not, it was not harmful, and for that reason, relief is not due. But, as a supervisory matter, I would disapprove of trial courts authorizing such displays.[1]

Chief Justice CAPPY joins this opinion.

---

1. I specifically distance myself from the *dicta* concerning prosecutorial misconduct that comprises Footnote 10 of the Majority's opinion. Majority at 539 n. 10, 919 A.2d at 951 n. 10.