J-A24041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE ENGRAM | : | |
| | : | |
| Appellant | : | No. 1640 WDA 2017 |

Appeal from the PCRA Order October 5, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015304-2008

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 22, 2021**

Jesse Engram ("Engram") appeals from the Order denying his first

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").

**See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously summarized the relevant factual and procedural

history as follows:

> On September 22, 2008, at approximately 10:40 [p.m.],
> Korey Johnson [("Johnson" or "the victim")] drove into the
> Sunoco gas station/convenience store located on Penn Avenue in
> the Wilkinsburg section of Allegheny County.  Johnson was
> accompanied by his girlfriend, Shermaine Campbell
> [("Campbell")], who was seated in the front passenger seat of
> Johnson's vehicle.  Johnson was driving a rather distinctive
> purple GMC with heavily tinted windows.  He stopped his vehicle
> at pump five with the driver's side facing Penn Avenue and
> Campbell's side facing the store itself. [This Sunoco has four
> dual-sided gasoline pumps, which are positioned in two rows of
> two.  The row that is closest to the convenience store contains
> pumps one through four, and the row that is farther away from
> the convenience store, and closer to Penn Avenue (the "second

row"), contains pumps five through eight. Pump five is located on the side of the second row that faces the convenience store.]

As [Johnson pulled into the gas station], [Engram] walked across Penn Avenue toward the gas pumps and pulled the hood of his sweatshirt over his head. [Engram] pulled a pistol from underneath his sweatshirt and walked directly to Johnson's side of the vehicle. [Engram] fired once through the driver's side window, which was up. He followed that initial shot with eight or nine more shots. The window did not shatter, but instead collapsed as one piece into the vehicle interior after the first shot. After the second shot, Campbell opened her door and crawled to the store to escape and request assistance.

City of Pittsburgh [P]olice [O]fficer William Wagner [("Officer Wagner")] was working a plainclothes detail inside the convenience store at the time and saw much of the event unfold. Officer Wagner immediately emerged from the store and pursued [Engram] as he fled back across Penn Avenue and behind a building. The foot pursuit ended abruptly when [Engram] "cut a corner," and fled down a side street out of Officer Wagner's sight.

… Medics arrived within minutes and attempted to keep Johnson alive for transport and treatment, but he was pronounced dead at the scene. Johnson was shot five times, suffering fatal [gunshot] wounds to the heart and lung. Ten 9mm casings were recovered at the scene[,] and it was determined that the casings were discharged from the same firearm.

Campbell, visibly shaken and upset, spoke to officers at the scene and stated that she "could not believe they shot him," and when asked specifically who shot Johnson, she responded "LL" three times. Campbell was taken to the homicide office[,] where she was formally interviewed and shown an eight person photo array. She immediately identified [Engram] as the shooter, writing on the array: "this is who I know as LL, this is who shot Korey."

[Engram] was charged with criminal homicide, firearms not to be carried without a license, and possession of firearms prohibited; the charge of possession of [] firearm[s prohibited] was severed prior to trial and later withdrawn. On November 8,

- 2 -

2010, [Engram] proceeded to a jury trial before the Honorable Edward J. Borkowski and was convicted of both counts. [Engram] was sentenced to life imprisonment and a consecutive period of two to four years' imprisonment.

***Commonwealth v. Engram***, 121 A.3d 1144 (Pa. Super. 2015) (unpublished memorandum at 1) (quoting Trial Court Opinion, 7/17/14, at 7-9). This Court affirmed Engram's judgment of sentence, and our Supreme Court denied Engram's Petition for Allowance of Appeal. ***Engram***, 121 A.3d at 5, ***appeal denied***, 125 A.3d 1198 (Pa. 2015).

On November 21, 2016, Engram filed the instant timely, counseled, PCRA Petition, alleging, *inter alia*, that his trial counsel, Eric Jobe, Esquire ("Attorney Jobe"), rendered ineffective assistance. On January 11, 2017, Engram filed an "Amended and Supplemental" PCRA Petition. On April 6, 2017, the PCRA court filed a Pa.R.Crim.P. 907 Notice of its intent to dismiss Engram's PCRA Petition. On April 25, 2017, Engram filed a Response to the PCRA court's Notice, a Petition to submit supplemental arguments, and a "Second Supplemental PCRA Petition." On May 22, 2017, the PCRA court granted Engram's Petition to submit supplemental arguments. On August 30, 2017, the PCRA court filed a second Pa.R.Crim.P. 907 Notice of its intent to dismiss Engram's PCRA Petition. On October 5, 2017, the PCRA court denied Engram's PCRA Petition. Engram filed a timely Notice of Appeal.

On December 20, 2017, Engram filed, with this Court, a *pro se* Petition to remove his counsel and proceed *pro se*. On December 29, 2017, this Court entered an Order remanding Engram's case to the PCRA court, and

directing the PCRA court to conduct a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). On March 7, 2018, following a ***Grazier*** hearing, the PCRA court granted Engram's Petition to remove counsel, and appointed Engram new counsel.

On June 13, 2018, Engram filed with this Court an Application to remand his case to the PCRA court, to allow him to respond to the PCRA court's second Rule 907 Notice. On June 15, 2018, this Court granted Engram's Application, remanded his case to the PCRA Court, and retained jurisdiction. On October 15, 2018, Engram filed a Response to the PCRA Court's Notice of intent to dismiss, and a Motion for additional time to investigate his claims. The trial court subsequently granted Engram's Motion. On April 11, 2019, Engram filed an Amended Response to the PCRA Court's Notice of intent to dismiss. On May 21-23, 2019, the PCRA court held a hearing on Engram's PCRA Petition. On January 10, 2020, the PCRA court denied Engram's PCRA Petition. Engram's appeal is now ripe for review.

On appeal, Engram presents the following questions for our review:

1. Whether [Attorney Jobe] ineffectively failed to investigate and present [Engram's] alibi, and failed to prevent [the] jury from drawing adverse inferences from the omission of [the] alibi[?]

2. Whether [Attorney Jobe] ineffectively failed to introduce an exculpatory surveillance videotape[?]

3. Whether [Attorney Jobe] ineffectively failed to object to unfounded speculation that [] Engram was associated with a prior murder[?]

4. Whether [Attorney Jobe] ineffectively failed to attack the testimony of [Officer] Wagner by (a) moving to suppress his suggestive identification, (b) disproving [Officer] Wagner's testimony that the shooter was dressed suspiciously causing [Officer] Wagner to keenly focus on his face, and (c) taking a remedial action when [Officer] Wagner testified for the first time at trial that he had made a prior identification of [] Engram[?]

5. Whether the prosecution knowingly used false evidence against [] Engram[,] which [Attorney Jobe] ineffectively failed to correct[?]

6. Whether [Attorney Jobe] ineffectively told the jury that a non-testifying witness identified [] Engram[?]

7. Whether cumulative prejudice deprived [] Engram of a fair trial[?]

8. Whether the remand proceedings were fundamentally unfair[?]

Brief for Appellant at 2-3.

"The standard of review of an order [denying] a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted).

In his first claim, Engram makes two arguments relating to Attorney Jobe's ineffectiveness and a purported alibi defense, which we will address separately. In the first argument, Engram states that he informed Attorney Jobe, prior to trial, that he was helping his family move at the time of the shooting. *Id.* at 19. Engram argues that Attorney Jobe rendered ineffective

assistance of counsel by failing to investigate this purported alibi. ***Id.*** at 19-22.

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove, by a preponderance of the evidence, that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically,

> [t]o be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, … 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from ***Commonwealth v. Pierce***, … 527 A.2d 973, 975-76 (Pa. 1987)). Counsel is presumed to have rendered effective assistance. Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (footnote and some citations omitted).

> Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of

counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it.

*Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000) (citations omitted).

Here, Attorney Jobe testified at the PCRA hearing as follows:

The only alibi witness, I believe, we were discussing on presenting was Jessie [E]ngram, who is [] Engram's mom. We had several discussions. She was always very involved in the case. We had several discussions regarding the case and regarding the alibi. The alibi I believe, being proper for – they were moving. Okay? That's not really a time watching event, although moving is very – can be very exhausting. But given the issue and the timing of when this shooting allegedly took place, you have to concern yourself whether it's going to hold up under cross examination and how it's going to be perceived by the jury.

In this case, I did not believe that there was enough there for this alibi to be air tight to where it could say: This is where he was at the time of the shooting. It seemed like[], to me, based on the information that I received, this moving was – I was comfortable with that information that moving did occur that day, but around the time of the shooting, I was not comfortable saying it was – I think this was around 10:45 [p.m.] I don't know when the shooting was actually. But I know I had concerns about that.

And then you take into fact that this was his mother, obviously. So there was going to be some inherent credibility issues, because it's her son. So she's going to say what she needed to say. The issue would be on cross examination, if there is any blundering or if there is any inconsistencies or the alibi is blown away. Then the Commonwealth could pretty much

argue that looks like a coverup. That maybe she does know that her son did something when she's saying that he can.

So the evidence is cut both ways. It's a judgment call. And because I had a witness that I knew going into the trial that was [the Commonwealth's] star witness, who was going to recant, which we did have a complete recant by that witness, when you factor in all those things, do you want to open up that box or not. Sometimes presenting evidence can do more harm that it can do good.

N.T., 5/21-23/19, at 152-53 (some paragraph breaks omitted and added).

Thus, Attorney Jobe investigated the purported alibi, and made a reasonable strategic decision not to call Engram's mother as a witness. *See Basemore*, *supra*. Engram has not alleged that, prior to trial, he informed Attorney Jobe about any other potential alibi witnesses whom Attorney Jobe failed to investigate. *See id.* We conclude that Attorney Jobe adequately investigated Engram's purported alibi. *See id.* Accordingly, Engram's underlying claim lacks merit, and Attorney Jobe was not ineffective on these grounds. *See Treiber*, *supra*.

In his second argument regarding his alibi, Engram states that Attorney Jobe was ineffective in failing to object to the prosecutor's statement to the jury, which suggested that Engram's alibi was fabricated. *See* Brief for Appellant at 23-26. Engram argues that the prosecutor's statement "drew an adverse inference from the date on which counsel filed formal notice of alibi," which is barred by Pa.R.Crim.P. 567(F). *Id.* at 24. According to Engram, Attorney Jobe should have objected to this statement, and requested a curative instruction. *Id.* at 24-26.

Pennsylvania Rule of Criminal Procedure 567(F) states as follows:

> **(F) Failure to Call Witnesses.** No adverse inference may be drawn against the defendant, nor may any comment be made concerning the defendant's failure to call available alibi witnesses, **when such witnesses have been prevented from testifying by reason of this rule**, unless the defendant or the defendant's attorney shall attempt to explain such failure to the jury.

Pa.R.Crim.P. 567(F) (emphasis added).

Here, Engram made the strategic decision not to present his alibi witness at trial. Thus, the witness was not prevented from testifying pursuant to Pa.R.Crim.P. 567(F), and the prosecutor was not barred from making this statement regarding Engram's alibi. *See* Pa.R.Crim.P. 567(F). Accordingly, Engram's underlying claim lacks merit, and Attorney Jobe was not ineffective on these grounds. ***See Treiber***, ***supra***.[1]

In his second claim, Engram makes three arguments relating to Attorney Jobe's failure to present at trial a video from a surveillance camera

_____

[1] Engram also argues that his prior PCRA counsel was ineffective in failing to investigate his alibi. Brief for Appellant at 22. However, Engram has not stated how prior PCRA counsel lacked a reasonable basis for his actions, and how Engram suffered prejudice as a result of counsel's inaction. ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); ***see also Chmiel***, 30 A.3d at 1128 (noting that boilerplate allegations and bald assertions cannot satisfy a petitioner's burden to prove ineffective assistance of counsel). Thus, this claim is waived. ***See Johnson***, ***supra***; ***Chmiel***, ***supra***.

that was positioned on the roof of the Sunoco convenience store. *See* Brief for Appellant at 27-31. We will address each of these arguments separately.

First, Engram states that the video proves his innocence because it "shows that identification witness [Officer] Wagner lacked an opportunity to view the [shooter] sufficient to [make] a reliable identification." *Id.* at 27. According to Engram, the video shows that there were obstructions to Officer Wagner's line of sight to the shooting. *Id.* at 27, 30.

Our review of the record discloses that the Sunoco camera was positioned on the roof of the convenience store, and not inside the store, where Officer Wagner was positioned when he witnessed the shooting. *See* N.T., 11/8-12/10, at 32. Engram does not explain how the video would prove that there were obstructions to Officer Wagner's line of sight, when the camera was not positioned in the immediate vicinity of where Officer Wagner was standing. Additionally, Attorney Jobe extensively cross-examined Officer Wagner, and impeached the credibility of his testimony regarding his view of the shooting on other grounds. *See* N.T., 11/8-12/10, at 51-61, 67-68; *see also Commonwealth v. Dennis*, 715 A.2d 404, 408 (Pa. 1998) (stating that trial counsel was not ineffective in failing to impeach a witness on specific grounds, where trial counsel adequately cross-examined the witness and impeached the witness in other ways). Accordingly, we conclude that Engram's underlying claim lacks merit, and Attorney Jobe was not ineffective on these grounds. *See Treiber*, *supra*.

Second, Engram states that the video "rebuts police testimony" that Campbell identified Engram as the shooter to police during their interview of her at the Sunoco station, shortly after the shooting. Brief for Appellant at 27, 30. Engram claims that the officers who heard Campbell identify Engram as the shooter testified that Campbell made this statement to police while they were standing outside of the front of the Sunoco convenience store, minutes after the shooting.[2] *Id.* at 30. Engram points out that the video spans from 10:37:15 p.m. to 10:52:37 p.m.; it shows the area outside of the front of the convenience store; and the shooting occurred around 10:41:09, which is eleven minutes before the end of the video. *Id.* at 28. According to Engram, "[i]f this interview actually took place, it would have appeared on the video, but it does not." *Id.* at 30. Campbell argues that because the video was not shown to the jury, "[t]he jury could not accurately determine whether Campbell made this statement without seeing the video." *Id.*

Here, two Pittsburgh police officers testified at trial that they had heard Campbell identify Engram as the shooter. *See* N.T., 11/8-12/10, at 76-98. Officer Ed Trapp ("Officer Trapp") testified that he arrived at the Sunoco "roughly" five minutes *after the emergency call had been made to the police station*, and that he interviewed Campbell "probably three to five

_____

[2] Engram does not identify the officers who heard Campbell make the statement identifying Engram as the shooter.

minutes after that." *Id.* at 78-79 (emphasis added). Thus, based on Officer Trapp's estimations, he spoke with Campbell between eight and ten minutes *after the call was made to the police station*. *Id.* It is unclear how long after the shooting occurred that the call was made to the police station. Therefore, even assuming that Officer Trapp's time estimations were correct, the evidence does not establish that he spoke with Campbell before the conclusion of the video.

Similarly, Sergeant Charles Henderson ("Sergeant Henderson") testified that he arrived at the Sunoco "about a minute" *after he had received the call*, and he heard Campbell identify Engram as the shooter approximately seven to ten minutes after he had arrived. *Id.* at 87. Thus, based on Sergeant Henderson's estimations, he heard Campbell make the identification around eight to eleven minutes after he had received the call. It is unclear how much time elapsed after the shooting, but before he received the call. Therefore, even assuming that Sergeant Henderson's time estimations were correct, the evidence does not establish that Sergeant Henderson heard Campbell identify Engram as the shooter before the conclusion of the video.

Moreover, Attorney Jobe cross-examined Campbell at trial, and elicited testimony from her that she did *not* identify Engram as the shooter to police at the Sunoco on the night of the shooting. *See id.* at 108. Thus, Attorney Jobe effectively rebutted the officers' testimony without needing to introduce

the video into evidence. ***See Dennis***, ***supra***. Accordingly, Engram failed to establish ineffective assistance on this basis. ***See Treiber***, ***supra***.

Third, Engram states that the video "contradicts [Officer] Wagner's testimony that the shooter was dressed in a suspicious manner" by wearing a hooded sweatshirt during "unusually hot weather" for that time of the year, where the video shows other gas station customers wearing "cool-weather attire," ***Id.*** at 27, 30-31. Engram argues that the video would have impeached the credibility of Officer Wagner's testimony by rebutting this statement regarding the weather. ***Id.***

Here, Attorney Jobe extensively cross-examined Officer Wagner, and impeached the credibility of his testimony on other grounds. ***See*** N.T., 11/8-12/10, at 51-61, 67-68; ***see also Dennis***, ***supra***. Accordingly, we conclude that Engram's underlying claim lacks merit, and Attorney Jobe was not ineffective on these grounds. ***See Treiber***, ***supra***.

In his third claim, Engram states that Attorney Jobe was ineffective in failing to object to certain trial testimony by Campbell. ***See*** Brief for Appellant at 32-36. At trial, Campbell was examined regarding how she knew Engram, and how Engram and the victim knew each other. ***Id.*** at 32-33. Engram points out that, during that line of questioning, Campbell "guessed" that Engram was friends with a man who previously was involved in an attempt to murder the victim. ***Id.*** Engram argues that such testimony

is barred by Pa.R.E. 602 as speculative, and caused prejudice by suggesting to the jury that Engram had shot the victim on this occasion. *Id.* at 32.

Here, even assuming Campbell's statement was speculative, it is unclear how the statement would establish, or even imply, that Engram shot the victim on this occasion. Accordingly, we conclude that Engram's underlying claim lacks merit and caused no prejudice. Consequently, Attorney Jobe was not ineffective for failing to object to the statement. *See Treiber*, *supra*.

In his fourth claim, Engram states that Attorney Jobe was ineffective in failing to object to the identification testimony of Officer Wagner. *See* Brief for Appellant at 37-45. Engram argues that Officer Wagner's identification at trial of him as the shooter was the first time he had identified Engram as the shooter, which made the identification "unnecessarily suggestive and created a substantial risk of misidentification." *Id.* at 38.

Here, Attorney Jobe extensively cross-examined Officer Wagner, and impeached the credibility of his testimony on other grounds. *See* N.T., 11/8-12/10, at 51-61, 67-68; *see also Dennis*, *supra*. Accordingly, we conclude that Engram's underlying claim lacks merit, and Attorney Jobe was not ineffective on these grounds. *See Treiber*, *supra*.

In his fifth claim, Engram claims that his right to due process under the Sixth and Fourteenth Amendments to the United States Constitution was violated when the Commonwealth knowingly submitted as evidence

fabricated testimony and deceiving photographs of the crime scene. ***See*** Brief for Appellant at 46-54. Engram states that the Commonwealth presented Officer Wagner's testimony, which identified Engram as the shooter, knowing that Officer Wagner was lying. ***Id.*** at 46. Engram further claims that the Commonwealth knowingly introduced certain photographs of the scene of the crime, with the intention of deceiving the jury. ***Id.*** at 47-54. Engram argues that the Commonwealth took the photographs during the daytime, when the shooting took place at night, and used magnifying lenses to make pump five look closer to the convenience store than it really was. ***Id.***

Here, Engram did not raise this claim on direct appeal. ***See*** 42 Pa.C.S.A. § 9544(b) (stating that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); ***see also Commonwealth v. Sarvey***, 199 A.3d 436, 446 (Pa. Super. 2018) (stating that the appellant waived his PCRA claim of a violation of his due process rights where the appellant failed to raise it on direct appeal). Accordingly, this claim is waived.

In his sixth claim, Engram argues that Attorney Jobe was ineffective in informing the jury, during his opening argument, that the Commonwealth would be presenting the eyewitness testimony of Alfred Diggs ("Diggs"), because Diggs did not ultimately testify at trial. Brief for Appellant at 55-56.

According to Engram, Attorney Jobe's statement that Diggs witnessed the shooting, and told police, when he was shown a photo array, that Engram's photo "kind of looks similar to the shooter, but [photo of a second person] kind of looks similar to the shooter[,] and [photo of a third person] kind of looks similar to the shooter," incriminated Engram. *Id.* at 55-56.

"The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Parker*, 919 A.2d 943, 950 (Pa. 2007).

Here, the trial court instructed the jury that

[t]he statements and arguments of the attorneys are not made under oath and although they are made in good faith, they are not evidence. Even though they are not binding upon you, you may give them due consideration if you find they are ultimately supported by the evidence and if they appeal to your own reason and common sense and judgment.

N.T., 11/8-12/10, at 14.

Thus, the jury was informed that it was foreclosed from considering Attorney Jobe's statement regarding Diggs in its determination of Engram's guilt. *See Parker*, *supra*. Accordingly, Engram's underlying claim lacks merit. Further, even if the jury could have considered this statement as evidence, it is unclear how it would have prejudiced Engram. Attorney Jobe's statement informed the jury that Diggs identified three individuals as the potential shooter, and showed no more confidence that Engram was the shooter than the other two individuals that he had identified. Accordingly,

- 16 -

Engram failed to establish prejudice caused by Attorney Jobe's statement. Based on the foregoing, we conclude that Attorney Jobe was not ineffective on these grounds. **See Treiber**, **supra**.

In his seventh claim, Engram argues that the cumulative prejudice of Attorney Jobe's alleged ineffectiveness deprived him of a fair trial. **See** Brief for Appellant at 58-61.

> We have often held that no number of failed claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

**Commonwealth v. Spotz**, 18 A.3d 244, 321 (Pa. 2011) (citation, quotation marks, and brackets omitted).

Here, as we have determined that Engram has failed to establish merit to any of his claims, this claim fails. **See id.**

In his eighth claim, Engram argues that the PCRA court violated his right to due process by denying his PCRA Petition while he was still investigating several of his ineffectiveness claims. **See** Brief for Appellant at 62-64. Engram states that he received the Commonwealth's Answer to his PCRA Petition on May 20, 2019, and he needed further time to investigate his claims before filing a reply brief. **Id.** According to Engram, he filed a Reply Brief on August 5, 2019, but advised the PCRA court that he intended to file a supplemental brief regarding the fifth claim that he raised herein.

*Id.* Engram states that the PCRA court denied his PCRA Petition on January 10, 2020, before he had the opportunity to file the supplemental reply brief. *Id.*

Here, Engram does not explain how his right to due process was violated, when he was afforded nearly eight months to investigate the Commonwealth's responses in its Answer. Nor does Engram support his claim with citation to legal authority. Accordingly, this claim is waived. *See Johnson*, *supra*.

Because we have determined that each of Engram's claims lack merit, we conclude that the PCRA court did not err in denying Engram's PCRA Petition. We therefore affirm the PCRA court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2021