J-A21008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAKIM BOND, | |
| Appellant | No. 3473 EDA 2012 |

Appeal from the Judgment of Sentence July 20, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007714-2009

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 07, 2014**

Hakim Bond appeals from the judgment of sentence of life imprisonment without parole imposed by the trial court after a jury found him guilty of first-degree murder, conspiracy to commit murder, and possession of an instrument of crime.  As Appellant was a juvenile at the time of the commission of the crimes, we vacate his judgment of sentence pursuant to **Miller v. Alabama**, 132 S.Ct. 2455 (2012), and **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013), and remand for re-sentencing.  In all other respects, we affirm.

On January 20, 2006, Marvin Flamer drove Appellant, a juvenile, and Nafeast Flamer to the 2200 block of West Pierce Street, Philadelphia.  The

_____

[*] Retired Senior Judge assigned to the Superior Court.

victim, Allen Moment Jr., was conversing with Aisha Williams outside of a Chinese restaurant at that location.[1]  As Ms. Williams began to walk away, Appellant and Nafeast Flamer exited the car and fired a barrage of bullets at the victim, striking the victim fourteen times.  Mr. Moment staggered into the arms of Ms. Williams, who cradled him until the arrival of police.  Despite being shot in his abdomen, chest, and both legs, Mr. Moment initially survived the attack.  Mr. Moment at first declined to identify his attackers as did Ms. Williams.  Due to the shooting, Mr. Moment remained confined to a hospital bed and had to be fed intravenously for the remainder of his life.  Since the victim had to be fed intravenously and used a catheter to urinate, he was subject to a high risk of infection and repeatedly suffered from blood poisoning and line sepsis.[2]

_____

[1] Ms. Williams, in a statement to police, indicated that she wished to purchase drugs from the victim.

[2] The Commonwealth introduced into evidence a letter from Appellant's doctor at the Hospital of the University, which detailed his medical complications as follows:

> Allen Moment Jr. was admitted to the Hospital of the University of Pennsylvania on 1/21/06 after sustaining multiple gunshot wounds to his abdomen, pelvis, and lower extremities. He was brought emergently to the operating room where he underwent exploratory laparotomy, multiple bowel resections and bladder repair.  His post-operative course was extremely complicated.  He developed bilateral lower extremity compartment syndrome, renal failure, multiple entercoutaneous fistulas, short gut syndrome, pericarditis with acute pericardial pneumonias, line infections, and urinary tract infection.  He

*(Footnote Continued Next Page)*

At the end of January 2008, Mr. Moment was taken to the Intensive Care Unit of Hospital of the University of Pennsylvania due to line sepsis. Mr. Moment's physician informed him and his family that he was likely going to die within several days. Accordingly, Mr. Moment requested to speak with police. Detectives interviewed Mr. Moment on February 4, 2008, while he was in the presence of his mother and an uncle. Mr. Moment named Marvin Flamer, and selected Appellant and Nafeast Flamer from photographic arrays as his assailants. Mr. Moment and Appellant had been friends for many years and the Flamers were his cousins. Two days after this statement, Mr. Moment identified Marvin Flamer from a photograph and indicated that he had been the driver of the vehicle involved. He again asserted that Appellant and Nafeast Flamer had shot him. Police also took a videotaped statement from the victim on February 14, 2008. Mr. Moment repeated that Appellant and Nafeast Flamer had shot him and Marvin Flamer had driven the car used in the incident.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> developed critical care myopathy which left him essentially quadriplegic. He required constant nursing care and frequent intensive care unit admissions. During the course of his 2 ½ year hospitalization he required multiple surgical procedurse including re-laparotomy, multiple bowel anastomosis, split thickness skin grafts, incision and drainage of lower extremities, tracheostomy, supra-pubic bladder drainage, thoracotomy, craniectomy, cholecystostomy tube placement, and multiple central venous lines.

Commonwealth's Exhibit C-8, Letter from Dr. Carrie Sims, 12/19/08.

Upon receiving this information from the victim, police sought information from Ms. Williams. Ms. Williams confirmed on both March 17, 2008, and August 29, 2008, that Appellant was one of the shooters, and identified both Marvin and Nafeast Flamer as additional perpetrators. At trial, however, Ms. Williams retracted these statements.

The victim died on August 6, 2008. Subsequently, on September 6, 2008, the Commonwealth charged Appellant with homicide, conspiracy to commit murder, and PIC. The Commonwealth and Appellant litigated several pre-trial motions, including a motion by the Commonwealth to introduce evidence regarding the death of an eyewitness, Abdul Taylor. Mr. Taylor was allegedly killed at the behest of Appellant's co-defendants. The court severed Appellant's trial from the trial of his co-defendants, and granted in part and denied in part the Commonwealth's motion. The court also held under advisement a portion of the motion. Specifically, relevant to this appeal, the court admitted testimony from two detectives who took a statement from Mr. Taylor on August 13, 2008, but noted that the statement was subject to redaction regarding Appellant. The Commonwealth filed an interlocutory appeal, but later discontinued it. Thereafter, Appellant proceeded to a jury trial on July 16, 2012. During the prosecutor's opening statement, he referred to Appellant's co-defendants having killed Mr. Taylor. The court also admitted into evidence, as dying declarations, several statements from the victim implicating Appellant in the shooting.

At the conclusion of the trial, the jury found Appellant guilty of the aforementioned crimes. The court sentenced Appellant on July 20, 2012, to life imprisonment without parole for the first-degree murder charge and imposed no further penalty on the remaining counts. Appellant filed a timely post-sentence motion, which the court denied by operation of law. Subsequently, Appellant filed a *pro se* notice of appeal, and the court ultimately appointed substitute counsel.[3] Original appellate counsel withdrew and the court appointed current counsel.

The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the court authored its Rule 1925(a) opinion. The matter is now ready for this Court's review. Appellant raises five issues in his principal brief.

[1.] Whether there was prosecutorial misconduct at trial, which tainted the trial and violated appellant's right to a fair trial under the U.S. Constitution 5th, 6th, and 14th Amendments and Pa. Constitution Art. I § 9, when the prosecutor violated the amended pretrial order (by [a] motion's judge) which specifically barred [the] Commonwealth from introducing any statements or comments to the jury which would implicate the appellant in the killing of an eyewitness.

[2.] Whether the trial court committed substantial legal error, violating appellant's right to a fair trial under [the] U.S. Constitution 5th, 6th, and 14th Amendments and Pa. Constitution Art. I § 9, when it denied appellant's oral motion for extraordinary relief for misconduct of the prosecutor in

_____

[3] Appellant had privately retained counsel for purposes of his trial. According to Appellant, that attorney declined to file a notice of appeal on his behalf.

- 5 -

prejudicial opening statements to the jury, in direct violation of the motion judge's amended pretrial order.

[3.] Whether the trial court committed substantial legal error, which was highly prejudicial to appellant, when it admitted a statement into evidence as a supposed "dying declaration" from a victim who did not die until approximately 2 ½ years after the incident and several months after making the supposed "dying declaration".

[4.] Whether the trial court committed substantial legal error, which was highly prejudicial to appellant, when it allowed a supposed "dying declaration" into evidence without redacting allegations relating to an unrelated, uncharged homicide, which the declaration attributed to the appellant and codefendant.

[5.] Whether the verdict was against the weight and sufficiency of the evidence.[4]

Appellant's brief at 4-5.

At the outset, we discuss Appellant's sufficiency of the evidence argument as a successful sufficiency challenge warrants discharge and not a retrial on the relevant crimes. We review the sufficiency of the evidence by considering the entire record and all of the evidence admitted at trial. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in

---

[4] Appellant has also filed a reply brief raising for the first time the lawfulness of Appellant's sentence under *Miller v. Alabama*, 132 S.Ct. 2455 (2012), and *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013). Generally, it is improper to raise and present new issues in a reply brief. *Commonwealth v. Basemore*, 744 A.2d 717, 726-727 (Pa. 2000). However, as this Court may consider legality of sentence issues *sua sponte*, we discuss this issue in the body of this memorandum.

favor of the Commonwealth.  *Id*.  When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail.  *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*.  In addition, the Commonwealth can prove its case by circumstantial evidence.  Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief.  This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

Instantly, Appellant's sufficiency argument is hinged entirely on the basis that the prosecutor wrongly attributed two additional homicides to Appellant and the court erred in admitting the dying declaration.  However, this argument has no bearing on a sufficiency analysis.  This Court considers all of the evidence introduced, even erroneously admitted evidence. Further, aside from citing one case relative to our standard of review, Appellant offers no legal support for his position.  Here, viewing the evidence in a light most favorable to the Commonwealth, it is clear that sufficient evidence exists to show that Appellant possessed a weapon with intent to commit a crime, shot and killed the victim, and conspired to do so with Nafeast and Marvin Flamer.  Appellant's sufficiency claim is devoid of merit.

Having rejected Appellant's sufficiency argument, we now proceed to examine his remaining issues. Appellant's first challenge is to the prosecutor's opening statement. Specifically, he contends that the prosecutor violated a pretrial order precluding the Commonwealth from introducing evidence that Appellant was involved in the killing of Abdul Taylor, a witness to the shooting in this matter who was shot in the head and killed prior to Appellant's trial. Appellant's case had been severed from his co-defendants because there was significant evidence that his co-defendants and another individual conspired to kill Mr. Taylor, but there was no evidence tying Appellant to that murder.[5]

Appellant maintains that "[o]nce the jury heard the prosecutor's opening that a witness was killed, and the prosecutor wrongly names the appellant as a perpetrator in that crime, he inflamed the jury and tainted the entire trial." Appellant's brief at 11. He adds that the court erred in declining to issue a cautionary instruction as requested.

The Commonwealth rejoins that Appellant did not object to the prosecutor's opening statement and has waived the issue. It acknowledges that Appellant did request the court to instruct the jury to disregard evidence of an uncharged crime, but that this objection occurred after the

_____

[5] The evidence linking Nafeast and Marvin Flamer to the death of Mr. Taylor is partially outlined in **Commonwealth v. Flamer**, 53 A.3d 87 (Pa.Super. 2012).

opening statement and was not in reference to the killing of Mr. Taylor. The Commonwealth continues on the merits that the prosecutor's opening did not suggest Appellant was involved in the death of Mr. Taylor. Rather, it submits that the prosecutor set forth, "The evidence overwhelmingly [shows] that Nafeas[t] and Marvin conspired to kill Abdul, and he was killed; Executed." N.T., 7/17/12, at 26. In addition, the Commonwealth notes that the jury did not hear any evidence implicating Appellant in the death of Mr. Taylor, and the jury was properly instructed that counsel's arguments are not evidence.

Statements made by a prosecutor during his opening or closing argument are "reversible error only if the prosecutor deliberately attempts to destroy the objectivity of the jury and the unavoidable effect of the remark is to create such a bias and hostility toward the defendant that the jury would be unable to render a true verdict." *Commonwealth v. Mollett*, 5 A.3d 291, 311 (Pa.Super. 2010) (citing *Commonwealth v. Laird*, 988 A.2d 618, 644 (Pa. 2010)). As our Supreme Court has opined,

> "The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Montgomery*, 533 Pa. 491, 498, 626 A.2d 109, 113 (1993) (citing *Commonwealth v. Nelson*, 311 Pa.Super. 1, 456 A.2d 1383 (1983)). In *Montgomery*, we acknowledged that "as a practical matter the opening statement can often times be the most critical stage of the trial, because here the jury forms its first and often lasting impression of the case." *Montgomery*, 533 Pa. at 498, 626 A.2d at 113. The prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. *Commonwealth v. Jones*, 530 Pa. 591,

607, 610 A.2d 931, 938 (1992). Such latitude is not without limits.

> "A prosecutor's statements must be based on evidence that he plans to introduce at trial, and must not include mere assertions designed to inflame the jury's emotions." *Commonwealth v. Begley*, 566 Pa. 239, 274, 780 A.2d 605, 626 (2001) (citing *Jones, supra*). A prosecutor's opening statements may refer to facts that he reasonably believes will be established at trial. *Id.*

*Commonwealth v. Parker*, 919 A.2d 943, 950 (Pa. 2007).

Appellant's claim fails for multiple reasons. First, he waived the issue by failing to object. Further, the prosecutor did not indicate that Appellant was involved in the death of Mr. Taylor, and the jury was properly instructed that counsel's arguments are not evidence. For all these reasons, Appellant is not entitled to relief.

The second issue Appellant levels on appeal is that the court erred in denying his oral motion for extraordinary relief based on the prosecutor's opening argument relative to Mr. Taylor's death. Setting aside that Appellant offers no citation in support of the merits of his position and includes only one boilerplate citation, this issue fails for the same reasons outlined in discussing Appellant's prior claim.

Appellant's third claim is that the trial court erred in admitting the victim's statements to police implicating Appellant as dying declarations. Appellant contends that because the victim's statements were made to police more than two years after he was shot, "it does not seem likely that

he experienced a sense of urgency that his life was imminently slipping away when he gave his statement to homicide detectives." Appellant's brief at 17.

The Commonwealth replies that the "admissibility of a dying declaration turns on the declarant's state of mind when he made the statements, not on how long the miracles of medical science enable him to survive for a longer period against all odds." Commonwealth's brief at 11. It maintains that, at the time the victim made his statements, his doctor had informed him that he was going to die, likely within days. Thus, the Commonwealth submits that the victim's state of mind at the time of his statements was that his death was imminent.

The Pennsylvania Rules of Evidence permit the introduction of a dying declaration as an exception to the hearsay rule. At the time of Appellant's trial, the rule permitted "[a] statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Former Pa.R.E. 804(b)(2) (rescinded and replaced effective March 18, 2013). This rule is derived from longstanding Pennsylvania law. In *Kilpatrick v. Commonwealth*, 31 Pa. 198 (1858), the High Court declared that dying declarations were inadmissible "unless at the time the declarant made them he was in actual danger of death; unless he believed death was impending, not distant; and unless death actually ensued." *Id*. at 215. There the victim died nine days after his statement. The *Kilpatrick* Court

found that the victim's statements were made under a sense of impending death. In this respect, the Court recognized:

> It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved, by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind.

*Id*. More recently, this Court has explained, "A statement is a dying declaration and, therefore, admissible hearsay if the declarant believes he or she is going to die (which can be inferred from the surrounding circumstances), death is imminent, and death actually results." *Commonwealth v. Priest*, 18 A.3d 1235, 1241 (Pa.Super. 2011).

In this case, the surrounding circumstances establish that the victim believed that his death was imminent. Specifically, after being readmitted to the Intensive Care Unit, his doctor informed him and his family that he was close to dying. The victim, after expressing his love for his mother, and telling her that he was not afraid, asked to speak with detectives. The victim's mother contacted police on January 31, 2008, and said that her son might not make it much longer and wished to tell police who shot him. Thereafter, on February 4, 2008, the victim identified Appellant as one of his attackers. He reiterated his identification on February 6, 2008, and in a videotaped interview on February 14, 2008. The officer who taped the interview testified that it was "the first time that I ever videotaped anything,

and it was just due to Allen's condition." N.T., 7/19/12, at 42. He added, "I believed the man was going to die shortly." *Id*. at 44.

Our Supreme Court has previously ruled that the fact that a victim did not die for a month after her statement did not preclude the admissibility of the statement where the individual believed death was approaching. ***Commonwealth v. Stickle***, 398 A.2d 957 (Pa. 1979). Although the victim in this matter survived for an additional seven months after the doctor informed him that he was going to die soon, the facts of this case establish that he believed that his death was imminent. Accordingly, we find no error by the trial court.

Appellant in his penultimate issue asserts that the trial court erred in allowing the victim's dying declaration to be admitted unredacted since that statement implicated Appellant and his co-defendants in the death of another person, Anthony Dickerson. In advancing his argument, Appellant points out that the victim's statement to police indicated that Appellant and Nafeast Flamer wanted to kill him because they believed the victim was seeking revenge for their killing of the victim's friend, Mr. Dickerson. Appellant notes that there was no proof that he was involved in the death of Mr. Dickerson, and he was not charged for that crime. According to Appellant, the court's failure to redact the victim's reference to this homicide was error.

The Commonwealth responds that Appellant's claim is waived because he did not seek a redaction prior to trial and did not object at the time the statement was read. Instead, Appellant objected after the witness who read the statement, a police officer, left the witness stand. With respect to the merits, the Commonwealth maintains that evidence of other bad acts is admissible for various purposes. It contends that evidence of a defendant's bad act is admissible to show motive or as part of the *res gestae* of the case. We agree that evidence that the victim was shot to prevent him from retaliating against Appellant for the shooting of Mr. Dickerson was admissible as evidence of Appellant's motive. ***See*** Pa.R.E. 404(b); ***Commonwealth v. Green***, 76 A.3d 575 (Pa.Super. 2013). Thus, Appellant is not entitled to relief.

In Appellant's final claim, he challenges both the sufficiency and the weight of the evidence. We have previously addressed Appellant's sufficiency argument and now reach his weight of the evidence position. "Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.*" ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (italics in original). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence[.]" ***Id***.

A court should not grant a new trial due to "a mere conflict in the testimony[.]" ***Id***. Instead, the court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. Only where the jury's finding "is so contrary to the evidence as to shock one's sense of justice" should a defendant be afforded a new trial. ***Id***.

In the present case, there are not certain facts that clearly outweigh those in support of Appellant's guilt. Appellant was identified by his victim as one of the shooters on multiple occasions while he believed his death was imminent. Further, Ms. Williams' prior statements to police, admitted as substantive evidence, corroborated the victim's account. Appellant's weight claim is meritless.

As noted, Appellant filed a reply brief raising for the first time that he was a juvenile at the time he committed this crime. Therefore, he submits that he could not be sentenced to a mandatory term of life imprisonment. The Commonwealth does not dispute Appellant's claim. Accordingly, since the issue relates to the legality of his sentence, and in light of ***Miller***, ***supra*** and ***Batts***, ***supra***, we vacate his judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for re-sentencing. Commonwealth's motion for post-submission communication filed July 29, 2014 is granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014